UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

    COLLEN COVEY,                                    Case No. 16-31047-dof
        Debtor.                                          Chapter 7 Proceeding
                                                   Hon. Daniel S. Opperman
_____/

ROBERT W. THOMAS, Special Personal
Representative of the Estate of Stewart
Ellsworth Hummer, deceased,
       Plaintiff,

v.                                                                 Adversary Proceeding
                                                              Case No. 16-3108-dof

COLLEN COVEY,
       Defendant.
_____/

TRIAL OPINION

The Plaintiff, Robert W. Thomas, the Special Personal Representative of the Estate of Stewart Ellsworth Hummer, seeks a determination from this Court that $49,338.75, plus accrued statutory interest, is excepted from discharge under 11 U.S.C. § 523(a)(4). The Defendant, Collen Covey, the daughter of Stewart Ellsworth Hummer, is a residual beneficiary and the Personal Representative of the estate. While the Defendant generally concedes that she acted as the Plaintiff claims, she denies that these acts constitute a basis to determine that any obligation she may owe to her father's estate is excepted from discharge. For the reasons stated in this Opinion, the Court concludes that a portion of the obligation owed by the Defendant to the estate is excepted from discharge.

1

## Findings of Fact

Mr. Hummer prepared a last will and testament naming the Defendant as Personal Representative of his estate. The will also directed that the Defendant pay funeral and final bills, as well as distribute $75,000 among the Defendant's three children who were to each receive $25,000. Mr. Hummer passed on January 5, 2012, leaving a house and some personal property in his sole name. The Defendant and Mr. Hummer were joint account holders in a bank account with a right of survivorship. When Mr. Hummer passed, approximately $85,400 was in that account. From this $85,400, the Defendant gave her children $25,000 each. As subsequently determined by the Lapeer County Probate Court, this money passed to the Defendant upon Mr. Hummer's death and was not part of Mr. Hummer's estate. Steps were taken to prepare the house for sale and along the way Stewart Hummer, Jr., the brother of the Defendant and the other residual beneficiary, disagreed as to the course of action taken by the Defendant. To that end, the Defendant's brother filed a petition with the Probate Court to determine that the $75,000 given by the Defendant to her children from the joint bank account fulfilled the estate's obligation to her children, to determine the amount that the Defendant owed the estate, and to determine whether the Defendant was further indebted to the estate in the amount of $6,400 for allowing her son to live in Mr. Hummer's home rent free. The probate court determined that the joint account was that of the Defendant as a result of Mr. Hummer's death and that she owed the estate $40,109, as well as $6,400. On June 18, 2013, a judgment against the Defendant was entered in favor of the estate for $46,509. The Defendant appealed that order.

A few months later, the estate closed on the sale of Mr. Hummer's home and received $83,300.57, which the Defendant deposited into a new estate bank account. At about the same time,

the Defendant's brother filed a petition for the appointment of a Special Personal Representative and the probate court appointed the Plaintiff on October 23, 2013.

In October 2013, the Defendant, relying upon previous advice of counsel, fulfilled Mr. Hummer's estate's obligation to her three children by writing each person a check in the amount $25,000, leaving approximately $16,571 in that account. Thereafter, the Plaintiff began inquiring as to the status of the bank account and the Defendant gave him the requested information. After more time passed, the Defendant withdrew the remaining $16,571.58 on April 7, 2014, without notifying the Plaintiff. She did so because she thought she was owed $16,612.53 for the estate expenses she advanced when the estate did not have any money to cover her father's final expenses. Again, proceedings were instituted in the probate court and a judgment in the amount of $16,571.58, plus statutory interest was entered against the Defendant on January 27, 2015. The probate court held a hearing on February 24, 2015, and required the Defendant to show cause why she should not be held in contempt of court for failure to pay these monies. The probate court found the Defendant in contempt of court and entered a money judgment against her in the amount of $16,571.58, plus $825 as further sanctions.

The Defendant was examined by the Plaintiff regarding her assets and her ability to pay this judgment. Thereafter, the Defendant began paying $200 per month for a year, but discontinued payments immediately prior to the filing of her petition seeking relief under Chapter 7 of the Bankruptcy Code on April 27, 2016.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts).

3

16-03108-dof    Doc 40    Filed 09/06/17    Entered 09/06/17 11:48:56    Page 3 of 8

Statement of Authorities

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ." The Sixth Circuit has held that § 523(a)(4) requires:

> (1) a fiduciary relationship
>     (a) in the form of an express trust or
>     (b) technical trust relationship;
> (2) breach of that fiduciary relationship; and
> (3) a resulting loss.

*R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 178-79 (6th Cir. 1997); *see also Patel v. Shamrock Floorcovering Services, Inc. (In re Patel)*, 565 F.3d 963 (6th Cir. 2009); *In re Johnson*, 691 F.2d 249, 251-52 (6th Cir. 1982) (finding that fiduciary capacity "applies only to express or technical trusts and does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity" and "the requisite trust relationship must exist prior to the act creating the debt and without reference to it") (citations omitted).

To establish the existence of an express trust, the plaintiff "must demonstrate: (1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *In re Patel*, 565 F.3d at 968 (internal quotation marks and citation omitted).

Once the plaintiff has established the existence of a trust and that the defendant is a trustee of a trust, the burden of proof shifts to the defendant. In *Cappella v. Little (In re Little)*, 163 B.R. 497 (Bankr. E.D. Mich. 1994), the Court found that the question of burden of proof for defalcation while acting in a fiduciary capacity was a substantive question, and thus should be determined under state law. *Id.* at 502. In reviewing Michigan law, the *Cappella* Court found that

> Michigan courts have repeatedly stated in various contexts that a trustee must account to the beneficiaries for the disposition of trust funds. . . . Failure to properly so account is, by definition, a defalcation.

> It has been stated that the beneficiary has the initial burden of proving the existence of a fiduciary duty and the trustee's failure to perform it . . . [T]he burden then shifts to the trustee . . . to prove it acted with . . . good faith . . . and made full disclosure of all facts related to the transactions at issue. . . . [T]he mere failure to account establishes a loss.
>
> Since trustees have a duty to account under Michigan law, it is only logical that the Debtor, a statutory trustee, must prove that no defalcation occurred – i.e., that he be required to account for the trust funds he received. . . . [T]he Michigan Supreme Court has stated that where a trustee is called upon in a court of equity to account for the funds received by him as trustee, . . . the duty rests upon him to so account, and the burden of proof is upon him to establish the correctness of the account.

*Id*. at 500-01 (internal quotation marks and citations omitted).

The Sixth Circuit Court of Appeals has held that defalcation for purposes of § 523(a)(4) "occurs through the misappropriation or failure to properly account for those trust funds" by a fiduciary. *Garver*, 116 F.3d at 180 (citation omitted). It requires a "pre-existing fiduciary relationship." *Patel*, 565 F.3d at 968.

In *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754 (2013), the Supreme Court decided the level of intent required for defalcation under § 523(a)(4):

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. . . . Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty. That risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation.

*Id.* at 1759-60 (internal quotation marks and citation omitted).

Analysis

The parties did not contest the existence of the fiduciary relationship or a breach of that fiduciary relationship by the Defendant because she is the Personal Representative of Mr. Hummer's estate. Instead, the major issues litigated at the May 30, 2017 trial involve the Defendant's intent and the damages incurred by the estate. In this case, these issues are linked, so the Court will address each issue as to the type of damages requested by the Plaintiff.

The June 18, 2013 probate court judgment in the amount of $46,509 resulted from a determination by that court that the Defendant owed the probate estate $40,109 for various expenses for various items, as well as $6,400 that the Defendant did not collect when her son lived in Mr. Hummer's house. This Court looks at these items of damages separately and reaches different conclusions as to the dischargeability of each obligation. First, with the record before the Court, the $40,109 appears to be a simple loan owed by the Defendant to her father's estate. From the proofs presented at trial, as well as a review of the exhibits admitted at trial, this Court cannot determine that there was any unusual amount incurred by the Defendant and owed to her father's estate other than miscellaneous expenses. Neither were there any proofs produced that the Defendant acted improperly, as a fiduciary, in incurring these expenses and debts or in failing to pay these debts. In short, this Court cannot find any improper action either as a breach of fiduciary duty by the Defendant or as an intentional act. Applying the *Bullock* court standards, in regard to this set of damages, this Court does not see the necessary knowledge or wrongdoing that fits within the obligations of a fiduciary as to this debt.

The same cannot be said for the $6,400 that the Defendant failed to collect from her son. Here, the direct evidence and proofs are much more compelling. As determined by the probate court, the Defendant allowed her son to live in her father's home, but did not collect rent from him.

6

Although there is a familial relationship, the pivotal relationship here was really a landlord/tenant relationship in which the landlord failed to collect rent from the tenant, thereby breaching the duty imposed on the Defendant as a fiduciary to collect rent. Accordingly, this Court holds that the requisite acts or conscious disregard of a fiduciary duty is present, and the amount of $6,400 is excepted from discharge.

The Defendant's actions in withdrawing the $16,571.58 is even clearer. While the Defendant testified at trial that she lacked any intent to take this money from the estate in part because she believed she was owed money by the estate, her actions in doing so and the full knowledge of the appointment by the probate court of a special Personal Representative compels this Court to hold that this amount is also excepted from discharge. While the Defendant testified that she attempted to contact the Plaintiff on numerous occasions to clarify what she should do with this money, and while it is perhaps regrettable that the Plaintiff did not contact either the Defendant or her attorney who he mistakenly believed represented her, her acts cannot be easily explained away by the failure of the Plaintiff to respond timely to her inquiries. The better course of action would have been for the Defendant to withdraw the money from the account, hold those funds, and inform the Plaintiff of the location of the funds. Instead, the Defendant spent this money.

As the probate court determined that the Defendant was in contempt of court and entered a judgment in the amount of $16,571.58, plus an additional sanction of $850, this Court holds that these amounts are excepted from discharge.

As established at the May 30, 2017 trial, the Defendant made 12 payments of $200 each and that total amount of $2,400 should be credited against the amounts determined as excepted from discharge in this case. Also, the evidence shows that the Defendant was owed $16,612.53 for various expenses connected with her duties as Personal Representative, including $3,264.20, which

7

16-03108-dof    Doc 40    Filed 09/06/17    Entered 09/06/17 11:48:56    Page 7 of 8

should be credited to the amount excepted from discharge in this case. Since interest was accruing on these obligations, but not disclosed fully at trial, and while this Court holds that the $6,400, $16,571.58 and $850 amounts are excepted from discharge, the interest calculation on that amount must be made and then the payments made or credits owed to the Defendant should be deducted from that amount before a judgment can be entered.

      Counsel for the Plaintiff is directed to make these calculations and then submit an order consistent with this Opinion and the entry of order procedures of this Court.

**Signed on September 06, 2017**

                                          /s/ Daniel S. Opperman
                                          **Daniel S. Opperman**
                                            **United States Bankruptcy Judge**